**Andrew Altschul, OSB No. 980302**
E-mail: andrew@baaslaw.com
**Kristine Lambert, OSB No. 010684**
E-mail: kristine@baaslaw.com
BUCHANAN ANGELI ALTSCHUL
& SULLIVAN LLP
321 SW Fourth Avenue, Suite 600
Portland, Oregon 97204
Telephone: 503.974.5015
Facsimile: 971.230.0337

     Of Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **Kaytlin Riverman,** | Civil No. |
|          **Plaintiff,** | **COMPLAINT** |
|      **v.** | (Retaliation and Termination in Violation of the False Claims Act, 31 U.S.C. § 3730(h)(1); Whistleblowing under ORS 659A.199; Family Medical Leave Act Interference in Violation of 29 U.S.C. § 2601 et seq.; Oregon Family Leave Act Interference under ORS 659A.150 et seq.; Oregon Family Leave Act Retaliation under ORS 659A.150 et seq.; Wrongful Discharge; Disability Discrimination and Retaliation under ORS 659A.103-145; Gender Discrimination and Retaliation under ORS 659A.030; Aiding and Abetting Discrimination and Retaliation in Violation of ORS 659A.030(1)(g)) |
| **N-LINK CORPORATION, a Washington corporation, and SANDRA GREEN, an individual.** | |
|          **Defendants.** | |
| | **DEMAND FOR A JURY TRIAL** |

## INTRODUCTION

1.      This is an action for declaratory, injunctive, and monetary relief, including punitive damages against defendants and attorneys' fees and costs, to redress unlawful employment practices to which defendants subjected plaintiff, in violation of plaintiff's statutory and common law rights.

## JURISDICTION

2.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, federal question jurisdiction.  This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  Both the federal and state claims alleged herein arose from a common nucleus of operative facts.  The state actions are so related to the federal claims that they form part of the same case or controversy and the actions would ordinarily be expected to be tried in one judicial proceeding.

3.      Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

## PARTIES

4.      Plaintiff Kaytlin Riverman ("plaintiff" or "Ms. Riverman") is currently a resident of Bend, Oregon.  During the relevant time period plaintiff was an employee of Defendant N-Link Corporation and worked at its Bend, Oregon offices.

5.      Defendant N-Link Corporation ("n-Link") is a private corporation licensed by the state of Oregon to do business in Oregon.

6.      Defendant Sandra Green ("Ms. Green") is an individual who, upon information and belief, resides in Bend, Oregon.  Defendant Green is the founder and CEO of n-Link

Corporation and was plaintiff's supervisor at the time of the retaliatory actions and termination at issue.

## GENERAL ALLEGATIONS

**A.  Ms. Riverman's Employment History and Experience at n-Link.**

7.      n-Link provides an array of IT services for government and commercial organizations.

8.      Ms. Riverman began working for n-Link on March 23, 2009 as an administrative assistant.

9.      Ms. Riverman was dedicated and focused, and quickly promoted to positions of increasing responsibility and compensation.

10.      During the period from 2009 through 2015, Ms. Riverman was promoted to Human Resources Coordinator, Human Resources Manager, Core Values Manager, Director of Core Values, Manager of Contracts & Legal, and finally, in December of 2015, Director of Contracts & Legal.

11.      Ms. Riverman was also an employee-owner, the corporate secretary and one of the core group of "infrastructure" employees.

12.      Ms. Riverman had an excellent performance history.

13.      In December of 2015, she received a $10,000 a year raise.  At the time of her promotion, Ms. Green described Ms. Riverman as having great initiative and smarts, and stated that she appreciated her willingness to learn different department's needs and obtain certifications as needed to be effective in her positions.  Ms. Green also said she had "tremendous potential" for continued growth at n-Link.

14.      In January of 2016, n-Link gave Ms. Riverman a performance bonus of $15,000.

15.     Ms. Riverman enjoyed her job at n-Link, and appreciated that she was able to learn and grow her skillset while at n-Link.

16.     As Ms. Riverman became more successful, Ms. Green increasingly criticized and harassed her about her desire for family time and was overtly hostile when she perceived (correctly or incorrectly) that Ms. Riverman might have a family commitment that conflicted with work requirements.  Ms. Green would make comments to Ms. Riverman that were dismissive of Ms. Riverman's occasional family obligations including, for example, that she was paying Ms. Riverman enough that she should never have to stay home with her kids and that Ms. Riverman needed to make her husband handle that burden.  Ms. Green also told Ms. Riverman on several occasions that she would not approve a request for time off if it was only to stay home with her kids.

17.     Ms. Green also told her that she wanted to keep promoting Ms. Riverman, but that Ms. Riverman needed to stop having kids.

18.     Ms. Green also used the fact that Ms. Riverman had children to care for at home as a reason to be dismissive of Ms. Riverman's contributions to the organization.  For example, if Ms. Green and Ms. Riverman disagreed about a work issue, Ms. Green would patronize Ms. Riverman, claiming that she knew that Ms. Riverman's performance would decline once she had her second child.

19.     Ms. Green also persistently engaged in a demeaning and humiliating commentary about Ms. Riverman's looks, in particular, her feminine style, mannerisms and qualities.

20.     Ms. Green regularly publicly humiliated Ms. Riverman for being too feminine, including in front of colleagues, government contacts and other professionals.

///

PAGE 4 – **COMPLAINT**

21.     Ms. Green regularly told Ms. Riverman that it did not matter if she was smart because she looked like a "bimbo."

22.     The more successful Ms. Riverman became, the worse Ms. Green's public criticism became.  While speaking at an important work training event for n-Link employees, for example, Ms. Green described Ms. Riverman as wearing "hooker" boots.

23.     Ms. Green also constantly ridiculed Ms. Riverman for wearing high-heeled shoes, saying in front of colleagues that Ms. Riverman looked "ridiculous in heels."

24.     Ms. Green also accused Ms. Riverman of wearing tighter clothes whenever men were around, something Ms. Riverman found particularly offensive because it was completely false.

25.     Ms. Green frequently chastised Ms. Riverman for acting in a feminine manner, and told her that she would not get anywhere in life if she did not learn to act like a man. Ms. Green also told Ms. Riverman that her femininity was distracting to men and that she would run into the glass ceiling if she did not change her feminine ways.

26.     Ms. Green mocked the feminine nature of Ms. Riverman's clothes, hair, voice and mannerisms.  She would follow these criticisms with subtler comments such as "when are you going to get dressed?" when she found Ms. Riverman's clothes too feminine.

27.     She accused Ms. Riverman of being sexually suggestive and stated that no one would ever take her seriously if she kept "wearing heels and flipping her hair."

28.     Essentially, Ms. Green told Ms. Riverman to forget that she was a woman, or she just would not make it any further in her career.

29.     When Ms. Riverman would try to stand up to Ms. Green about these demeaning comments, Ms. Green would remind Ms. Riverman that she was not educated and could never

get another comparable job outside of n-Link.

30.     Ms. Riverman persisted in the job because she feared Ms. Green was right about her ability to find comparable employment given her lack of education.

31.     This fear, coupled with the fact that Ms. Riverman knew she was doing good work – Ms. Green never criticized her performance–caused Ms. Riverman to tolerate the constant barrage of comments from Ms. Green despite the significant and negative impact Ms. Green's words had on Ms. Riverman.

32.     In the fall of 2015, the stress level at n-Link was particularly high due to significant turnover in the corporate staff.

33.     Ms. Riverman's stress caused her to seek medical attention after she felt a flutter in her chest.  Ms. Riverman discovered that she had a stress-induced heart condition.  The doctor's advice was simple: get the stress under control.

34.     In December of 2015, Ms. Green promoted Ms. Riverman to the position of Director of Contracts & Legal.

35.     Shortly thereafter, n-Link changed Ms. Riverman's reporting structure and she was asked to report directly to newly hired General Manager Kevin Shelton, rather than to Ms. Green.  This change was effective February 5, 2016.

**B.  Ms. Riverman Opposed n-Link's Fraudulent Certification and Disclosed her Medical Condition and Need for Leave, Causing a Cascade of Responses by n-Link Leading to her Termination**

36.     In the beginning of 2016, Ms. Green and Ms. Riverman started ongoing communications related to the company's "Woman Owned Small Business" ("WOSB") certification.

///

37. n-Link's designation as a WOSB allowed them to bid on and obtain contracts that were not generally available.

38. As a pre-qualified vendor with this designation, they were among a small group eligible to access and utilize the government's "e-buy" system to bid on opportunities set aside for WOSB companies.

39. Without the WOSB designation, n-Link would not get e-buy notifications or be permitted to bid on contracts set aside for WOSB companies.

40. Ms. Riverman had long questioned whether the company was acting lawfully in self-certifying as a WOSB both for itself and for its joint venture, n-Link LSV JV, which was 50% owned by n-Link.

41. Ms. Green had been certifying to the government for years that n-Link was a WOSB.

42. Ms. Riverman understood that, while the WOSB designation was correct during its early years, once n-Link became a 100% employee-owned enterprise by selling all remaining shares to its Employee Stock Ownership Plan ("ESOP"), the business no longer qualified for the WOSB designation.

43. Ms. Riverman asked Ms. Green about this several times over the years, and Ms. Green gave her a complicated explanation about the fact that Ms. Green held stocks in suspense to justify the continued use of the WOSB designation.

44. For a long time, Ms. Riverman accepted Ms. Green's explanation even though it did not make sense to her, because she did not grasp the intricacies of the ESOP or WOSB programs and trusted Ms. Green.

///

45.     After Ms. Riverman assumed responsibility for contracts and legal compliance, Ms. Riverman investigated the WOSB certification further.  Ms. Riverman's concerns, as they related to n-Link, had to do with the company's ESOP, but she also had concerns regarding the certification for n-Link LSV JV related to the fact that n-Link held a 50% ownership.

46.     In fact, the issue came to the forefront for Ms. Riverman due to n-Link LSV JV's certification.  Ms. Riverman was concerned that the joint venture sought the WOSB designation when it was, on its face, only 50% owned by n-Link.  A 50% ownership stake, even if n-Link was a WOSB, was not sufficient to turn the n-Link LSV JV into a WOSB.

47.     Ms. Riverman confirmed her suspicion that it would be fraudulent to submit a proposal claiming that n-Link LSV JV was a WOSB because n-Link, even if it was a WOSB, only owned 50% of the company.

48.     After delving into the specific requirements related to n-Link LSV JV, Ms. Riverman spent time understanding the specific regulations related to the WOSB designation and had a more thorough understanding of the law.

49.     After finishing her research, Ms. Riverman was convinced that n-Link could not certify as a WOSB and explained her findings to Ms. Green.

50.     Ms. Riverman was correct.  An ESOP cannot claim WOSB certification.

51.     Ms. Green again disagreed and told Ms. Riverman to submit the certification as a WOSB on the SAM.gov portal, the government's site for certification, bidding and other resources related to government contacts.

52.     Ms. Riverman continued to explain why the company no longer qualified as a WOSB, and had several additional conversations with Ms. Green.

///

53.     When Ms. Green continued to insist that Ms. Riverman keep the WOSB designation, Ms. Riverman decided to focus her efforts on explaining to Mr. Shelton, to whom she officially reported, why n-Link did not qualify as a WOSB and that she could not continue certifying n-Link as a WOSB.

54.     Ms. Riverman told Mr. Shelton that she concluded it would be fraudulent to submit the WOSB certification as requested by Ms. Green and that she absolutely would not do so.

55.     The n-Link WOSB certification and registration on SAM.gov were due to expire on April 1, 2016.

56.     On March 31, 2016, Ms. Riverman logged in and completed the entire renewal process, which required making the representations and certifications as to the company's current status on a variety of issues, including its status as a WOSB.

57.     At the conclusion of the process, the system required that Ms. Riverman sign a certification of truthfulness.

58.     Ms. Riverman refused to defraud the government; accordingly, Ms. Riverman removed n-Link's WOSB designation.

59.     After completing the registration, Ms. Riverman advised Mr. Shelton that she had completed the registration and removed the certification as she would not lie, per their prior conversations.  She also advised Ms. Green that she completed the registration.

60.     That same day, Ms. Riverman who was also recovering from a long and stressful work project associated with submitting a huge proposal, realized that her heart was bothering her again.  She went to the doctor who advised Ms. Riverman that she needed to take 30 days of leave as a direct result of her heart condition.

PAGE 9 – **COMPLAINT**

61.     On April 1, 2016, Ms. Riverman provided Erin Bucchignano, Vice President of Human Resources, with notice of her medical condition and need for leave.

62.     Ms. Riverman worked to minimize the burden associated with her leave on the n-Link team.  To that end, Ms. Riverman created a Dropbox folder to organize her work projects and provide transition materials, to ensure that her work projects were appropriately covered.  Ms. Riverman also reached out to Ms. Green and Mr. Shelton to schedule a time to meet and review ongoing projects and ensure her work was handled appropriately during her short absence.

63.     Ironically, however, no one ever asked to meet with her and she received only one small request for information related to the information she uploaded to Dropbox.

64.     Three days later, on April 4, 2016, Ms. Riverman noted that n-Link was populating her online personnel file with emails about prior leave requests from Ms. Riverman to Ms. Green, which Ms. Green described as Ms. Riverman's "coming and going."  These emails were unrelated to her request for medical leave.  These emails were also not previously in her online personnel file.

65.     These emails mysteriously disappeared only a day later.  Almost immediately, however, Ms. Bucchignano created a new folder called "Kayt's absences-lateness."

66.     Ms. Riverman did not have access to this folder and could not see the documents added to it.

67.     At the time Ms. Riverman went out on leave, Ms. Riverman and other "infrastructure" employees' leave requests were handled pursuant to a leave policy called Responsibility Leave which had been in effect for a few years.

68.     Under the Responsibility Policy as written and explained in emails which

accompanied the change, certain key "infrastructure" employees were permitted to take
unlimited paid leave and manage their own leave.

69.    The only limitation on the leave that was ever discussed at the time of
implementation or later related to the possibility of limiting the total amount of leave if an
"infrastructure" employee went on short term disability.

70.    On April 6, 2016, Ms. Bucchignano advised Ms. Riverman that n-Link had
decided to change the Responsibility Leave policy.

71.    Ms. Bucchignano told Ms. Riverman that pursuant to n-Link's new Responsibility
Leave policy, Ms. Riverman would be limited to 80 hours of paid leave.

72.    Ms. Riverman immediately conveyed to Ms. Bucchignano that n-Link was
improperly targeting her for taking medical leave and changing the policy to discourage or
interfere with her right to take the leave she was taking.

73.    Ms. Riverman also asked how n-Link could deny paid leave for her medical
condition when Ms. Riverman would have been permitted to take unlimited paid time off under
the Responsibility Leave policy for a vacation or any other reason.

74.    Ms. Bucchignano replied only that she would investigate.

75.    On April 8, 2016, Ms. Riverman discovered that n-Link had attempted to change
her Dropbox password without her permission, going so far as logging into Ms. Riverman's
email account and trying to delete emails related to the request to change her password to Ms.
Riverman from Dropbox before she had a chance to notice them.  Ms. Riverman's account
required a two-step verification, however, so she was able to see the actions they were taking.

76.    Because n-Link could not change the password without Ms. Riverman's
assistance, Ms. Bucchignano was forced to reach out to Ms. Riverman and explain that n-Link

had tried to change her password and wanted to obtain admin/owner rights to n-Link's Dropbox account.

77.    Ms. Riverman expressed serious concern about the actions n-Link was taking, reminding Ms. Bucchignano that n-Link had not treated her this way when she was on extended vacation or during her maternity leave.

78.    n-Link had also not gone to these extremes when other employees had taken extended leaves.

79.    Ms. Riverman asked whether she was being punished for taking medical leave.

80.    On April 12, 2016, Ms. Riverman submitted her medical leave paperwork as requested by n-Link.  Ms. Bucchignano responded on April 16, and advised her that she had been approved to take up to 160 hours of paid leave for the period from April 1, 2016 through March 31, 2017.

81.    Ms. Riverman is not aware of any other person eligible for Responsibility Leave whose leave has been limited.

82.    Shortly thereafter, without any notice to Ms. Riverman, n-Link terminated Ms. Riverman's Dropbox access and removed administrative privileges for all the n-Link systems, including email, human resources and payroll.

83.    Ms. Riverman had never seen n-Link take similar actions against an employee because they were on a leave or on vacation.  In particular, n-Link never took such actions when Ms. Riverman was on approved leave after the birth of her second child or on other leaves.

84.    Around this same time, Ms. Riverman realized that n-Link had deleted her Sam.gov login, the system to certify the WOSB, and changed the GovWin & E-Buy passwords.

///

PAGE 12 – **COMPLAINT**

85.     When Ms. Riverman investigated further, she realized that several days prior, Ms. Green had logged into the n-Link and n-Link LSG JV registrations and changed both to fraudulently reflect that they were WOSB certified.

86.     Ms. Green also removed Ms. Riverman as a contact on the Sam.gov website. These changes are a part of the public record.

87.     On April 18, 2016, Ms. Riverman discovered that all of her business email was being redirected to Ms. Green.

88.     The forwarding was set to send all of Ms. Riverman's email to Ms. Green without leaving a copy in Ms. Riverman's own email account.  This meant that Ms. Riverman would never see a copy of the communications which were directed to her, related to her work projects and were happening in her absence.

89.     Ms. Riverman is not aware of n-Link taking such action for any other employee on leave.  n-Link never did anything like that during her prior leaves or vacation periods.

90.     This change was designed to intentionally keep information from Ms. Riverman and ensure that she was out of the loop on critical work issues.  It also meant that Ms. Riverman's colleagues and customers were not getting responses to their inquiries, which made Ms. Riverman look unresponsive.

91.     The significance of these calculated decisions to deny her access to company systems, delete her logins and other credentials required to do her job, redirect her email, and implement a new paid leave policy targeting her directly caused Ms. Riverman to realize that n-Link was looking to force her out.

92.     This realization increased Ms. Riverman's stress and made it difficult for her to obtain the rest she needed to recover.

93.     A few days later, on April 22, 2016, Ms. Riverman discovered that someone had modified her time card to delete all hours she worked between April 1 and April 15.  This included between 20-35 hours of work she had engaged in to help n-Link with the transition during her medical leave, work that was done at Ms. Bucchignano's request.

94.     Ms. Riverman immediately notified Ms. Bucchignano that someone had modified her timecard and deleted the hours she had worked.

95.     Ms. Bucchignano responded by letter on April 24, saying that Ms. Riverman was not permitted to engage in further work and that n-Link lacked sufficient information as to the time submitted.  Ms. Bucchignano did not take responsibility for deleting her clocked hours, nor did she agree to pay for the time worked.  Instead, she demanded to know exactly what Ms. Riverman had worked on during her clocked hours, implying that n-Link was questioning the legitimacy of Ms. Riverman's worked time.

96.     This sort of skepticism was unbelievable to Ms. Riverman who had never engaged in or been accused of any conduct which would cause n-Link to question her integrity.

97.     Ms. Bucchignano did not provide any explanation about why n-Link suddenly did not trust one of its most senior executives.  She only stated they would "need to meet with [her] to confirm the accuracy of the time entries" at the time Ms. Riverman returned from leave.

98.     Ms. Riverman immediately responded, yet again, to reiterate that someone else had modified her time sheet and reminded Ms. Bucchignano that it was Ms. Bucchignano that directed her to complete the work and assist in the transition.

99.     On April 29, Ms. Riverman submitted an OFLA recertification, seeking an extension of her medical leave through September 30, 2016.

///

PAGE 14 – **COMPLAINT**

100.     Ms. Bucchignano responded to Ms. Riverman's request on May 2, 2016, and stated that Ms. Riverman would exhaust her entitlement to OFLA leave on June 29, 2016.

101.     On May 12, 2016, Ms. Bucchignano asked Ms. Riverman to provide n-Link with the passwords and login credentials for all corporate accounts and work equipment that contained company information.

102.     This was followed shortly thereafter with a request for Ms. Riverman's computer and phone.

103.     n-Link sent a package via FedEx to Ms. Riverman on June 3 which included drop-off instructions for n-Link equipment in her possession.

104.     Ms. Riverman provided the requested password and login information as requested on June 6.  She also dropped of her phone and computer to n-Link's attorney, as requested, on June 7.

105.     Almost immediately, n-Link cut off all of Ms. Riverman's remaining access to company systems, files and information.

106.     Also on May 12, Ms. Riverman received a letter requesting that she complete a questionnaire to initiate the interactive process with regard to her disability and ongoing need for leave.

107.     Ms. Riverman asked her physician to complete the paperwork and explain her need for an accommodation.

108.     Ms. Riverman hoped to initiate the interactive process with the company about a possible extended leave once they were in receipt of the paperwork.

109.     No one ever contacted Ms. Riverman to state that they received the paperwork or to discuss her medical needs or a possible accommodation of Ms. Riverman's medical condition.

110.    On June 29, Ms. Riverman's protected medical leave expired.

111.    That same day, n-Link advised Ms. Riverman that she was terminated effective immediately.

## FIRST CLAIM FOR RELIEF
### False Claims Act ("FCA") Retaliation in Violation of 31 U.S.C. § 3730(h)
### Against Defendant n-Link

112.    Plaintiff incorporates by reference the allegations in paragraphs 7 through 111 as if fully set forth herein.

113.    Plaintiff reasonably and in good faith believed that n-Link's certification as a WOSB was fraudulent and violated federal statutes and regulations, including but not limited to 13 C.F.R. § 127.201.

114.    Plaintiff reasonably and in good faith believed that the certification of n-Link's subsidiary, n-Link LSV JV, as a WOSB was fraudulent and violated federal statutes and regulations, including but not limited to 13 C.F.R. § 127.201.

115.    Plaintiff reasonably and in good faith reported to n-Link and Shelton that she had investigated Green's statements regarding the WOSB certification and that she refused to follow Green's direction due to her belief that her directive violated federal regulations and laws.

116.    Plaintiff, in good faith, engaged in protected activity by reporting to n-Link, Green and Shelton conduct she believed was fraudulent and a violation of federal and state rules and regulations.

117.    Plaintiff, in good faith, engaged in protected activity by reporting to n-Link and Shelton that she would not and did not falsely certify that n-Link was a WOSB.

118.    As a direct and proximate result of plaintiff's report and opposition to defendant n-Link's unlawful activities, defendant terminated her employment.

119.    As a direct and proximate result of plaintiff's refusal to engage in unlawful activities and defraud the government, defendant terminated her employment.

120.    n-Link's actions were intentional and constituted unlawful retaliation in violation of 31 U.S.C. § 3730(h)(1).

121.    Plaintiff is entitled to all appropriate injunctive and equitable relief, including but not limited to reinstatement.

122.    Defendant n-Link is required to compensate plaintiff for the lost wages, salary, employment benefits, and other compensation she has suffered and will continue to suffer as a consequence of her discharge, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

123.    Plaintiff is further entitled to penalties of two times the amount of her back pay due to n-Link's unlawful action.

124.    Plaintiff is entitled to an award of compensation to offset the tax penalties associated with incurring lost wage payments in a lump sum amount or for receiving unpaid compensation in one tax year.

125.    Plaintiff has hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees, expert fees, and costs incurred herein pursuant to 31 U.S.C. § 3730(h)(2).

**SECOND CLAIM FOR RELIEF**
**Retaliation for Whistleblowing Related to Federal Contracting**
**Rules in Violation of ORS 659A.199**
**Against Defendant n-Link**

126.    Plaintiff incorporates by reference the allegations in paragraphs 7 through 125 above as if fully set forth herein.

127.    Plaintiff reasonably and in good faith believed that n-Link's certification as a

WOSB was fraudulent and violated federal statutes and regulations, including but not limited to 13 C.F.R. § 127.201.

128.    Plaintiff reasonably and in good faith believed that the certification of n-Link's subsidiary, n-Link LSV JV, as a WOSB was fraudulent and violated federal statutes and regulations, including but not limited to 13 C.F.R. § 127.201.

129.    Plaintiff reasonably and in good faith reported to n-Link and Shelton that she had investigated Green's statements regarding the WOSB certification and that she refused to follow Green's direction due to her belief that her directive violated federal regulations and laws.

130.    Plaintiff, in good faith, engaged in protected activity by reporting to n-Link, Green and Shelton conduct that she believed was fraudulent and a violation of federal and state rules and regulations.

131.    Plaintiff, in good faith, engaged in protected activity by reporting to n-Link and Shelton that she would not and did not falsely certify that n-Link was a WOSB.

132.    As a direct and proximate result of plaintiff's report and opposition to defendant n-Link's unlawful activities, defendant terminated her employment.

133.    As a direct and proximate result of plaintiff's refusal to engage in unlawful activities and defraud the government, defendant terminated her employment.

134.    Defendant's actions were intentional and constituted unlawful retaliation in violation of ORS 659A.199.

135.    Plaintiff is entitled to a declaration that defendant n-Link violated her statutory right to report and resist wrongful conduct.

136.    Plaintiff is entitled to all appropriate injunctive and equitable relief, including but not limited to reinstatement.

137.    Defendant n-Link is required to compensate plaintiff for the lost wages, salary, employment benefits, and other compensation she has suffered and will continue to suffer as a consequence of her discharge, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

138.    As a direct and proximate result of defendant n-Link's actions as alleged herein, plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, damage to her professional reputation, and loss of enjoyment of life, for which plaintiff seeks compensation in an amount to be determined at trial, but not less than $750,000.

139.    Plaintiff is entitled to an award of compensation to offset the tax penalties associated with incurring lost wage payments in a lump sum amount or for receiving unpaid compensation in one tax year.

140.    Plaintiff has hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees, expert fees, and costs incurred herein pursuant to ORS 659A.885 and ORS 20.107.

141.    n-Link's actions as alleged herein were intentional, willful, and with reckless disregard to plaintiff's statutory rights.  Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.  Plaintiff, therefore, also seeks punitive damages.

**THIRD CLAIM FOR RELIEF**
**Retaliation for Whistleblowing Related to Asserting Wage and Hour**
**Violations in Violation of ORS 659A.199**
**Against Defendant n-Link**

142.    Plaintiff incorporates by reference the allegations in paragraphs 7 through 141 above as if fully set forth herein.

143.    Plaintiff, in good faith, engaged in protected activity by reporting the company's failure to pay wages due and reporting the company's intentional and unauthorized deletion of

PAGE 19 – **COMPLAINT**

her time entries to verify she worked and was entitled to her full salary during the pay periods from April 1 to April 15.

144.    As a direct and proximate result of plaintiff's opposition to defendant n-Link's refusal to pay wages due, defendant terminated her employment.

145.    Defendant's actions were intentional and constituted unlawful retaliation in violation of ORS 659A.199.

146.    Plaintiff is entitled to a declaration that defendant n-Link violated her statutory right to report and resist wrongful conduct.

147.    Plaintiff is entitled to all appropriate injunctive and equitable relief, including but not limited to reinstatement.

148.    Defendant n-Link is required to compensate plaintiff for the lost wages, salary, employment benefits, and other compensation she has suffered and will continue to suffer as a consequence of her discharge, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

149.    As a direct and proximate result of defendant n-Link's actions as alleged herein, plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, damage to her professional reputation, and loss of enjoyment of life, for which plaintiff seeks compensation in an amount to be determined at trial, but not less than $750,000.

150.    Plaintiff is entitled to an award of compensation to offset the tax penalties associated with incurring lost wage payments in a lump sum amount or for receiving unpaid compensation in one tax year.

151.    Plaintiff has hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees, expert fees, and costs incurred herein pursuant to ORS 659A.885 and

ORS 20.107.

152.    n-Link's actions as alleged herein were intentional, willful, and with reckless disregard to plaintiff's statutory rights.  Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.  Plaintiff, therefore, also seeks punitive damages.

## FOURTH CLAIM FOR RELIEF
**Retaliation for Whistleblowing and Opposing Unlawful Discrimination for Taking Medical Leave in Violation of ORS 659A.199 and ORS 659A.030(f)**
**Against Defendant n-Link**

153.    Plaintiff incorporates by reference the allegations in paragraphs 7 through 152 above as if fully set forth herein.

154.    Plaintiff, in good faith, engaged in protected activity by resisting and opposing the company's decision to eliminate some of her leave benefits because of her use of medical leave.

155.    As a direct and proximate result of plaintiff's opposition to defendant n-Link's attempt to eliminate some of her leave benefits and oppose n-Link's refusal to discriminate against her for taking lawfully protected medical leave, defendant terminated her employment.

156.    Defendant's actions were intentional and constituted unlawful retaliation in violation of ORS 659A.199 and/or ORS 659A.030(f).

157.    Plaintiff is entitled to a declaration that defendant n-Link violated her statutory right to report and resist wrongful conduct.

158.    Plaintiff is entitled to all appropriate injunctive and equitable relief, including but not limited to reinstatement.

159.    Defendant n-Link is required to compensate plaintiff for the lost wages, salary, employment benefits, and other compensation she has suffered and will continue to suffer as a consequence of her discharge, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

160.    As a direct and proximate result of defendant n-Link's actions as alleged herein, plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, damage to her professional reputation, and loss of enjoyment of life, for which plaintiff seeks compensation in an amount to be determined at trial, but not less than $750,000.

161.    Plaintiff is entitled to an award of compensation to offset the tax penalties associated with incurring lost wage payments in a lump sum amount or for receiving unpaid compensation in one tax year.

162.    Plaintiff has hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees, expert fees, and costs incurred herein pursuant to ORS 659A.885 and ORS 20.107.

163.    n-Link's actions as alleged herein were intentional, willful, and with reckless disregard to plaintiff's statutory rights.  Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.  Plaintiff, therefore, also seeks punitive damages.

**FIFTH CLAIM FOR RELIEF**
**Family Medical Leave Act ("FMLA") Interference in Violation of 29 U.S.C. § 2601 et seq.**
**Against Defendant n-Link**

164.    Plaintiff incorporates by reference the allegation in paragraphs 7 through 163 as if fully set forth herein.

165.    At all material times, n-Link was a covered employer under the FMLA.

166.    At all material times, defendant n-Link had employed plaintiff for 12 months, and plaintiff had performed at least 1,250 hours of service for defendant n-Link during the preceding 12-month period.

167.    On or about April 1, plaintiff requested FMLA leave due to plaintiff's own serious health condition.  N-Link approved and Plaintiff thereafter took FMLA leave to which

she was statutorily entitled.

168.    Defendant n-Link, in direct response to plaintiff's taking protected medical leave, interfered with plaintiff's right to leave when it:

    a.    Changed its leave policy to eliminate some of the paid leave to which plaintiff was entitled per policy;

    b.    Required her to give up access to n-Link's computers, systems, and information;

    c.    Required her to return her n-Link property;

    d.    Redirected her email away from her;

    e.    Advised other employees that she was out on disability and was having mental and emotional issues; and

    f.    Terminated her employment.

169.    The FMLA provides that it is unlawful interference with and/or restraint of an employee's rights under the FMLA under 29 U.S.C. §2615(a)(1) to consider the employee's use of protected leave as a negative factor in a decision to terminate the employee.  n-Link considered plaintiff's use of protected leave as a negative factor in making the decision to retaliate against and terminate plaintiff.

170.    n-Link acted willfully and with knowledge that its actions were in violation of FMLA or with reckless disregard of whether it was violating FMLA.

171.    Plaintiff is entitled to a declaration that defendant n-Link violated her statutory right to be free of interference with her statutorily protected FMLA rights.

172.    Plaintiff is entitled to all appropriate injunctive and equitable relief, including but not limited to paid leave time for the entire period of her leave and reinstatement to her prior position.

173.    Defendant n-Link is required to compensate plaintiff for the lost wages, salary, employment benefits, and other compensation she has suffered as a consequence of her discharge, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

174.    Plaintiff is entitled to recover liquidated damages in an amount equal to the sum of plaintiff's lost benefits, plus prejudgment interest thereon, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii) because n-Link did not act in good faith and lacked reasonable grounds for believing that its termination of plaintiff was not a violation of the FMLA.

175.    Plaintiff is entitled to an award of compensation to offset the tax penalties associated with incurring lost wage payments in a lump sum amount or for receiving unpaid compensation in one tax year.

176.    Plaintiff has hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to 29 C.F.R. §825.400 and 29 U.S.C. § 2617(a)(3).

**SIXTH CLAIM FOR RELIEF**
**Oregon Family Leave Act ("OFLA") Retaliation in Violation of ORS 659A.183**
**Against Defendant n-Link**

177.    Plaintiff incorporates by reference the allegations in paragraphs 7 through 176 as if fully set forth herein.

178.    At all material times, n-Link was a "covered employer" as defined by ORS 659A.150(1).

179.    At all material times, plaintiff was an "eligible employee" as defined by ORS 659A.150(2) and ORS 659A.156.

180.    On or about April 1, 2016, plaintiff requested leave pursuant to OFLA due to

plaintiff's own serious health condition.  Plaintiff thereafter took OFLA leave to which she was statutorily entitled.

181.    Plaintiff engaged in protected activity by requesting and using lawfully protected family leave.

182.    It is unlawful under ORS 659A.183(2) to retaliate or discriminate against an individual because the individual has inquired about the provisions of OFLA, submitted a request for family leave, or invoked the OFLA.

183.    Defendant n-Link, in direct response and retaliation for plaintiff's taking protected medical leave:

    a.    Changed its leave policy to adversely impact plaintiff's right to paid leave;

    b.    Required her to give up access to n-Link's computers, systems, and information;

    c.    Required her to return her n-Link property;

    d.    Redirected her email away from her;

    e.    Advised other employees that she was out on disability and was having mental and emotional issues, not heart problems; and

    f.    Terminated her employment.

184.    Plaintiff's use of statutorily protected leave was a motivating factor in making the decision to retaliate against and terminate plaintiff.

185.    Defendant n-Link's actions were intentional and constituted unlawful interference with plaintiff's statutory rights and retaliation in violation of ORS 659A.183.

186.    Plaintiff is entitled to a declaration that defendant n-Link violated her statutory right to be free of interference, retaliation and termination for exercising statutorily protected OFLA rights.

187.    Plaintiff is entitled to all appropriate injunctive and equitable relief, including but not limited to paid leave time for the entire period of her leave and reinstatement.

188.    Defendant n-Link is required to compensate plaintiff for the lost wages, salary, employment benefits, and other compensation she has suffered and will continue to suffer as a consequence of her discharge, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

189.    Plaintiff is entitled to a separate award of compensation to offset the tax penalties associated with incurring wage payments in one lump sum and/or for receiving lost wages in one tax year.

190.    Plaintiff has hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to ORS 659A.885(1) and ORS 20.107.

**SEVENTH CLAIM FOR RELIEF**
**Wrongful Termination in Violation of Public Policy**
**Against Defendant n-Link**

191.    Plaintiff incorporates by reference the allegations in paragraphs 7 through 190 above as if fully set forth herein.

192.    Family leave is a personal benefit and right to which plaintiff is entitled as a matter of public policy under ORS 659A.150 et seq. and 29 U.S.C. § 2601 et seq.

193.    Plaintiff took statutorily-protected medical leave which is the exercise of a job-related right of important public interest.

194.    Even though n-Link granted the leave request, n-Link terminated plaintiff's employment, in substantial part, due to her request to take statutorily protected leave and in retaliation for invoking her job-related rights under the federal and state leave laws.

195.    n-Link's termination of plaintiff constituted a breach of public policy favoring an employee's right to seek time off work to care for their own serious health condition as set forth in ORS 659a.150 et. seq. and 29 U.S.C. § 2601 et seq.

196.    Plaintiff does not have available to her adequate statutory remedies because her statutory remedies fail to compensate her for the personal nature of the injury caused by her wrongful discharge.

197.    Defendant n-Link is required to compensate plaintiff for the lost wages, salary, employment benefits, and other compensation she has suffered as a consequence of her discharge, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

198.    As a direct and proximate result of defendant n-Link's actions as alleged herein, plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, damage to her professional reputation, and loss of enjoyment of life, for which plaintiff seeks compensation in an amount to be determined at trial, but not less than $750,000.

199.    Plaintiff is entitled to a separate award of compensation to offset the tax penalties associated with incurring wage payments in one lump sum and/or for receiving lost wages in one tax year.

200.    Plaintiff has hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to ORS 20.107.

201.    n-Link's actions as alleged herein were intentional, willful, and with reckless disregard to plaintiff's statutory rights.  Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.  Plaintiff, therefore, also seeks punitive damages.

**EIGHTH CLAIM FOR RELIEF**
**Disability Discrimination and/or Retaliation in Violation of ORS 659A.103-145**
**Against Defendant n-Link**

202.    Plaintiff incorporates by reference the allegations in paragraphs 7 through 201 as if fully set forth herein.

203.    At all material times, plaintiff had a disability as defined by ORS 659A.104.

204.    n-Link discriminated against plaintiff by retaliating against her and terminating her employment because of her disability in violation of ORS 659A.112.

205.    n-Link discriminated against plaintiff based upon her disability by treating her less favorably than non-disabled employees due her disability when it:

   a.   Changed its leave policy to adversely impact plaintiff's right to paid leave;

   b.   Required her to give up access to n-Link's computers, systems, and information;

   c.   Required her to return her n-Link property;

   d.   Redirected her email away from her

   e.   Advised other employees that she was out on disability and was having mental and emotional issues, not heart problems;

   f.   Refused to consider possible accommodations; and

   g.   Terminated her employment.

206.    Plaintiff is entitled to a declaration that n-Link violated her state statutory right to be free of disability discrimination and/or retaliation based on her disability.

207.    Plaintiff is entitled to injunctive relief and other equitable relief that may be appropriate, including but not limited to reinstatement.

208.    Defendant n-Link is required to compensate plaintiff for the lost wages, salary, employment benefits, and other compensation she has suffered as a consequence of her

discharge, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

209.    As a direct and proximate result of defendant n-Link's actions as alleged herein, plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, damage to her professional reputation, and loss of enjoyment of life, for which plaintiff seeks compensation in an amount to be determined at trial, but not less than $750,000.

210.    Plaintiff is entitled to a separate award of compensation to offset the tax penalties associated with incurring wage payments in one lump sum and/or for receiving lost wages in one tax year.

211.    Plaintiff is entitled to recover her reasonable attorneys' fees, expert fees and costs pursuant to ORS 20.107 and ORS 659A.885(1).

212.    n-Link's actions as alleged herein were intentional, willful, and with reckless disregard to plaintiff's statutory rights.  Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.  Plaintiff, therefore, also seeks punitive damages.

**NINTH CLAIM FOR RELIEF**
**Failure to Accommodate Disability in Violation of ORS 659A.112**
**Against Defendant n-Link**

213.    Plaintiff incorporates by reference the allegations in paragraphs 7 through 212 as if fully set forth herein.

214.    At all material times, plaintiff had a disability as defined by ORS 659A.104.

215.    Plaintiff sought an accommodation for her medical condition and n-Link discriminated against plaintiff by refusing to engage in the interactive process required by law.

216.    n-Link further discriminated against plaintiff by refusing to provide her with reasonable accommodation in violation of ORS 659A.112.

217.    Plaintiff is entitled to a declaration that defendant n-Link violated her state statutory right to be free of disability discrimination and/or retaliation.

218.    Plaintiff is entitled to injunctive relief and other equitable relief that may be appropriate, including but not limited to reinstatement.

219.    Defendant n-Link is required to compensate plaintiff for the lost wages, salary, employment benefits, and other compensation she has suffered as a consequence of her discharge, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

220.    As a direct and proximate result of defendant n-Link's actions as alleged herein, plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, damage to her professional reputation, and loss of enjoyment of life, for which plaintiff seeks compensation in an amount to be determined at trial, but not less than $750,000.

221.    Plaintiff is entitled to a separate award of compensation to offset the tax penalties associated with incurring wage payments in one lump sum and/or for receiving lost wages in one tax year.

222.    Plaintiff is entitled to recover her reasonable attorneys' fees, expert fees and costs pursuant to ORS 20.107 and ORS 659A.885(1).

223.    n-Link's actions as alleged herein were intentional, willful, and with reckless disregard to plaintiff's statutory rights.  Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.  Plaintiff, therefore, also seeks punitive damages.

///

///

///

### TENTH CLAIM FOR RELIEF
### Gender Discrimination – ORS 659A.030
### Against n-Link

224.    Plaintiff incorporates by reference the allegations in paragraphs 7 through 223 above as if fully set forth herein.

225.    n-Link discriminated against plaintiff because of her sex.

226.    Defendant Green assumed that plaintiff was less competent due to her feminine qualities and her feminine appearance and publically humiliated and chastised plaintiff for acting and dressing in a feminine manner.

227.    Defendant Green's sex stereotyped ideas about how women in the workforce should look and act caused her to react more harshly to plaintiff's lawfully protected activity.

228.    Defendant's assumptions about plaintiff's parenting responsibilities and commitments constitute unlawful sex stereotyping, as evidenced by:

  a.  Treating plaintiff's leave requests more harshly than she treated other employees who requested leave;

  b.  Refusing to allow plaintiff the same right to telecommute as she provided to other employees;

  c.  Communicating to plaintiff that her family choices suggested she was not sufficiently committed to her work; and

  d.  Communicating to plaintiff that she needed to stop having children if she wanted to continue getting ahead.

229.    Defendant n-Link's assertion that plaintiff was likely to take off extra time or fail to perform as needed because she had a family demonstrates that defendant believed plaintiff was less committed to her job due to her family obligations.  Defendant n-Link did not make

similar statements to male employees.

230.    Defendant n-Link discriminated against plaintiff by holding her to standards to which it did not hold similarly-situated male employees.

231.    Defendant n-Link's actions were intentional and constituted unlawful discrimination in violation of ORS 659A.030.

232.    Plaintiff is entitled to a declaration that defendant n-Link violated her statutory right to be free of gender discrimination.

233.    Plaintiff is entitled to injunctive relief and other equitable relief that may be appropriate, including but not limited to reinstatement.

234.    Defendant n-Link is required to compensate plaintiff for the lost wages, salary, employment benefits, and other compensation she has suffered as a consequence of her discharge, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

235.    As a direct and proximate result of defendant n-Link's actions as alleged herein, plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, damage to her professional reputation, and loss of enjoyment of life, for which plaintiff seeks compensation in an amount to be determined at trial, but not less than $750,000.

236.    Plaintiff is entitled to a separate award of compensation to offset the tax penalties associated with incurring wage payments in one lump sum and/or for receiving lost wages in one tax year.

237.    Plaintiff is entitled to recover her reasonable attorney's fees, expert fees and costs pursuant to ORS 20.107 and ORS 659A.885(1).

///

PAGE 32 – **COMPLAINT**

238.    n-Link's actions as alleged herein were intentional, willful, and with reckless disregard to plaintiff's statutory rights.  Such conduct exceeds the bounds of social toleration and is of the type that punitive damages deter.  Plaintiff, therefore, also seeks punitive damages.

### ELEVENTH CLAIM FOR RELIEF
### Aiding and Abetting in Violation of ORS 659A.030(1)(g)
### Against Defendant Green

239.    Plaintiff incorporates by reference the allegations in paragraphs 7 through 238 above as if fully set forth herein.

240.    Defendant Green, in violation of O.R.S. 659A.030(1)(g), engaged in deliberate actions designed to aid and abet Defendant n-Link's discrimination of plaintiff in violation of plaintiff's statutory rights under ORS 659A.030, ORS 659A.112, ORS 659A.183 and ORS 659A.199.

241.    Plaintiff is entitled to a declaration that Green aided and abetted n-Link's efforts to engage in unlawful discrimination.

242.    Defendant Green is required to compensate plaintiff for the lost wages, salary, employment benefits, and other compensation she has suffered as a consequence of her discharge, in an amount to be determined at trial, plus interest thereon at the statutory rate of 9% per annum.

243.    As a direct and proximate result of defendant Green's actions as alleged herein, plaintiff has suffered embarrassment, anxiety, humiliation, anger, emotional distress, inconvenience, damage to her professional reputation, and loss of enjoyment of life, for which plaintiff seeks compensation in an amount to be determined at trial, but not less than $750,000.

244.    Plaintiff is entitled to a separate award of compensation to offset the tax penalties associated with incurring wage payments in one lump sum and/or for receiving lost wages in one

tax year.

245.    Plaintiff has hired legal counsel to prosecute her claims and is entitled to her reasonable attorneys' fees and costs incurred, including expert witness fees, pursuant to O.R.S. 659A.885 and O.R.S. 20.107.

246.    The actions of defendant Green as alleged herein were intentional, willful, and with reckless disregard to plaintiff's statutory rights.  Accordingly, plaintiff intends to seek to amend her complaint to add a claim for punitive damages in an amount to be determined at trial. WHEREFORE, plaintiff prays for judgment against defendant as follows:

1.    On Plaintiff's First Claim for Relief:

    a.    All appropriate injunctive and equitable relief, including but not limited to reinstatement;

    b.    An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial;

    c.    Penalties of two times the amount of back pay;

    d.    An award to offset the tax consequences of obtaining a lump sum; and

    e.    Plaintiff's attorneys' fees, expert fees and costs incurred herein.

2.    On Plaintiff's Second Claim for Relief:

    a.    A declaration that defendant n-Link violated her statutory right to report and resist wrongful conduct;

    b.    All appropriate injunctive and equitable relief, including but not limited to reinstatement;

    c.    An award of economic damages for past and future lost wages and

benefits and out-of-pocket expenses, plus prejudgment interest, in an
amount to be determined at trial;

    d.    An award of noneconomic damages in the amount of $750,000.00;

    e.    An award to offset the tax consequences of obtaining a lump sum;

    f.    Plaintiff's attorneys' fees, expert fees and costs incurred herein; and

    g.    An award of punitive damages against defendant.

3.    On Plaintiff's Third Claim for Relief:

    a.    A declaration that defendant n-Link violated her statutory right to report
and resist wrongful conduct;

    b.    All appropriate injunctive and equitable relief, including but not limited to
reinstatement;

    c.    An award of economic damages for past and future lost wages and
benefits and out-of-pocket expenses, plus prejudgment interest, in an
amount to be proven at trial;

    d.    An award of noneconomic damages in the amount of $750,000.00;

    e.    An award to offset the tax consequences of obtaining a lump sum;

    f.    Plaintiff's attorneys' fees, expert fees and costs incurred herein; and

    g.    An award of punitive damages against defendant.

4.    On Plaintiff's Fourth Claim for Relief:

    a.    Plaintiff is entitled to a declaration that n-Link violated her statutory right
to report and resist wrongful conduct;

    b.    All appropriate injunctive and equitable relief, including but not limited to
reinstatement;

c.    An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial;

d.    An award of noneconomic damages in the amount of $750,000.00;

e.    An award to offset the tax consequences of obtaining a lump sum;

f.    Plaintiff's attorneys' fees, expert fees and costs incurred herein; and

g.    An award of punitive damages against defendant.

5.    On Plaintiff's Fifth Claim for Relief:

a.    Plaintiff is entitled to a declaration that n-Link violated her statutory right to be free from discrimination or interference with her lawfully protected family leave rights;

b.    All appropriate injunctive and equitable relief, including but not limited to paid leave for the entire period of her leave and reinstatement;

a.    An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be determined at trial;

b.    An award of liquidated damages;

c.    An award to offset the tax consequences of obtaining a lump sum; and

d.    Plaintiff's attorneys' fees, expert fees and costs incurred herein.

6.    On Plaintiff's Sixth Claim for Relief:

a.    A declaration that defendant n-Link violated her statutory right to be free of interference, retaliation and termination for exercising statutorily protected OFLA rights;

b.      All appropriate injunctive and equitable relief, including but not limited to reinstatement;

c.      An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be proven at trial;

d.      An award to offset the tax consequences of obtaining a lump sum;

e.      Plaintiff's attorneys' fees, expert fees and costs incurred herein.

7.    On Plaintiff's Seventh Claim for Relief:

a.      An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be proven at trial;

b.      An award of noneconomic damages in the amount of $750,000.00;

c.      An award to offset the tax consequences of obtaining a lump sum;

d.      Plaintiff's attorneys' fees, expert fees and costs incurred herein; and

e.      An award of punitive damages against defendant.

8.    On Plaintiff's Eighth Claim for Relief:

a.      A declaration that n-Link violated her state statutory right to be free of disability discrimination and/or retaliation based on her disability;

b.      All appropriate injunctive and equitable relief, including but not limited to reinstatement;

c.      An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be proven at trial;

    d.      An award of noneconomic damages in the amount of $750,000.00;

    e.      An award to offset the tax consequences of obtaining a lump sum;

    f.      Plaintiff's attorneys' fees, expert fees and costs incurred herein; and

    g.      An award of punitive damages against defendant.

9.     On Plaintiff's Ninth Claim for Relief:

    a.      A declaration that defendant n-Link violated her state statutory right to be free of disability discrimination and/or retaliation;

    b.      All appropriate injunctive and equitable relief, including but not limited to reinstatement;

    c.      An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be proven at trial;

    d.      An award of noneconomic damages in the amount of $750,000.00;

    e.      An award to offset the tax consequences of obtaining a lump sum;

    f.      Plaintiff's attorneys' fees, expert fees and costs incurred herein; and

    g.      An award of punitive damages against defendant.

10.    On Plaintiff's Tenth Claim for Relief:

    a.      A declaration that defendant n-Link violated her state statutory right to be free of gender discrimination;

    b.      All appropriate injunctive and equitable relief, including but not limited to reinstatement;

///

///

PAGE 38 – **COMPLAINT**

      c.      An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be proven at trial;

      d.      An award of noneconomic damages in the amount of $750,000.00;

      e.      An award to offset the tax consequences of obtaining a lump sum;

      f.      Plaintiff's attorneys' fees, expert fees and costs incurred herein; and

      g.      An award of punitive damages against defendant.

11.      On Plaintiff's Eleventh Claim for Relief:

      a.      A declaration that defendant Green aided and abetted n-Link's efforts to engage in unlawful discrimination;

      b.      All appropriate injunctive and equitable relief, including but not limited to reinstatement;

      c.      An award of economic damages for past and future lost wages and benefits and out-of-pocket expenses, plus prejudgment interest, in an amount to be proven at trial;

      d.      An award of noneconomic damages in the amount of $750,000.00;

      e.      An award to offset the tax consequences of obtaining a lump sum;

      f.      Plaintiff's attorneys' fees, expert fees and costs incurred herein; and

      g.      An award of punitive damages against defendant.

12.      Any further or alternative relief in favor of plaintiff that the court deems appropriate.

13.      Plaintiff demands a jury trial.

///

DATED this 10th day of February, 2017.    BUCHANAN ANGELI ALTSCHUL
                                            & SULLIVAN LLP

                                            s/ Andrew Altschul
                                            _____
                                            Andrew Altschul, OSB No. 980302
                                            E-mail: andrew@baaslaw.com
                                            Kristine Lambert, OSB No. 010684
                                            E-mail: kristine@baaslaw.com
                                            Telephone: (503) 974-5015
                                            Of Attorneys for Plaintiff

PAGE 40 – **COMPLAINT**